UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DOUGLAS SCHMID                                                                                          Plaintiff

vs.                                                              Civil Action No: 1:04-cv-855-LG-RHW

COMMISSIONER OF SOCIAL SECURITY
                                                                                                        Defendant

## PROPOSED FINDINGS OF FACT AND RECOMMENDATION

### Procedural History and Factual Background

Pursuant to 42 U.S.C. § 405(g), Douglas Schmid seeks judicial review of the partial denial of his claim for disability insurance benefits. Schmid argues that the Commissioner's decision is not supported by the evidence or based upon proper legal standards.

Schmid initially filed a Title II application for disability insurance benefits on January 23, 2002, alleging benefits beginning on September 28, 2001. This application was denied. Schmid filed the instant Title II application for disability insurance benefits on August 15, 2002. This application was initially denied. Schmid filed a request for hearing before an Administrative Law Judge (ALJ), which was conducted on September 29, 2003. The ALJ concluded that Schmid was disabled from September 28, 2001 to December 17, 2002, but not thereafter. The Appeals Council upheld the ALJ's decision. Schmid then appealed to this Court.

**Personal History**

At the time of the alleged onset of disability, Schmid was forty-two years old, and he was forty-four when the ALJ rendered the decision which is the subject of this proceeding. On the date of the hearing, Schmid was married and resided in Poplarville, Mississippi with his wife and two children. R. 200. Schmid has a ninth grade education. R. 15. He began working as a

roughneck on an offshore oil rig in 1986. R. 44. He continued to work as a roughneck until 1997, when he was promoted to crane operator. *Id.* He completed crane operating school in 2001. R. 37. His duties required him to carry and move supplies and equipment around the oil rig. R. 195. His duties as a crane operator also included supervising a crew of four workers. R. 207-08.

On September 28, 2001, Schmid injured his right foot when a deer stand he was occupying fell. R. 196. His injured right foot subsequently caused him to injure his left knee. R. 97. Schmid has not worked since the date of the injury. He received his truck driver's license after the accident. R. 16. However, he has not attempted to find employment as a truck driver because operating the clutch causes him too much pain.[1] R. 220.

As for his daily activities, Schmid has a driver's license. R. 206. He drove approximately an hour to the hearing. R. 206. He spends a typical day watching television, walking to the barn, and visiting friends. R. 200, 218. He is able to mow grass for thirty to forty-five minutes before his ankle and knee become painful. R. 207. He occasionally fishes at his mother's house; staying about fifteen minutes before leaving because of the pain. R. 219. He is able to walk up stairs, but it is a painful and lengthy process. R. 205, 215-217. He can stoop, squat, and bend at the waist. R. 217. He is able to lift twenty pounds. R. 217.

Schmid testified he experiences pain every time he walks. R. 200. To help alleviate the pain in his left leg, he sits and rubs his leg. R. 202. Periodically, he uses ointment and heating pads. R. 202, 203. Everyday he elevates his leg and ankle to reduce the pain and swelling which

---

[1]Schmid testified he has only attempted to drive a heavy duty log truck. He has not attempted to find employment driving a light truck or delivery van. R. 222.

takes approximately thirty minutes.  R. 203, 204.  Claimant takes Vioxx when the pain is severe.  R. 208.

**Medical History**

Dr. James Gosey is the only physician to have attended to Schmid's initial and subsequent injuries.  Dr. Gosey examined Schmid for the first time on October 2, 2001.  An X-ray of Schmid's right foot indicated a comminuted[2] calcaneous (heel) fracture.  R. 120.  A CT scan on October 5, 2001 revealed the same.  R. 120.  On October 8, 2001, Dr. Gosey operated on Schmid's right heel.  R. 15, 86.  Dr. Gosey inserted ten pins and a plate in Schmid's foot.  R. 85, 196.  Schmid was able to place a little weight on his foot at the beginning of November 2001.  R. 118.  On December 4, 2001, Schmid was placed in a regular shoe and given a cane to use.  R. 120.

On January 8, 2002, Schmid was able to walk about an hour before developing pain in his foot.  R. 115.  In April of 2002, Schmid reported to Dr. Gosey that he can stand four to five hours.  *Id.*  He did begin to complain of developing left knee pain.  Dr. Gosey injected Schmid's knee with a steriod to help ease the pain.  *Id.*  Dr. Gosey opined that Schmid's right ankle injury was causing Schmid's left knee pain.  *Id.*  On May 6, 2002, Dr. Gosey reported Schmid could stand up five to six hours per day.  R. 114. However, his left knee continued to cause him pain.  *Id.*  A magnetic resonance imagine (MRI) study of Schmid's left knee was normal.  *Id.*  Dr. Gosey recommended arthoscopic surgery on Schmid's left knee.  *Id.*

On May 27, 2002, Schmid underwent arthoscopic surgery on his left knee.  R. 97.  Schmid had swelling and fluid on his knee following surgery.  R. 114.  On June 21, June 28, and

---

[2]A fracture in which the bone is broken, splintered, or crushed into a number of pieces

July 5, 2002, Dr. Gosey drained fluid from Schmid's knee and injected a lubricant (Synvisc) into his knee to help loosen his joint. R. 113-14.  On August 13, 2002, Dr. Gosey reported Schmid losing flexibility in his knee and experiencing some quad atrophy. R.113.

Dr. Gosey released Schmid to light duty work as of November 1, 2002. R. 144.  Schmid was limited to spending at least half of the day sitting and half of the day walking. *Id.*

On December 17, 2002, Schmid complained of knee and foot pain. R. 125.  Schmid reported he could stand on his feet about half of the day. *Id.*  Dr. Gosey reported Schmid's knee had a good range of motion and no real swelling, but some quad atrophy existed . *Id.*  At that time, Dr. Gosey believed Schmid could work as a heavy equipment operator, crane operator, or truck driver. *Id.*

Schmid again complained of left knee pain on May 13, 2003. *Id.*  Dr. Gosey reported his knee was swollen and there was some quad atrophy. *Id.*  Dr. Gosey injected Schmid's knee with a steroid to reduce the swelling and pain. *Id.*  An X-ray did not show much in the way of narrowing at any particular corner of his knee. *Id.*  Schmid has not had any medical treatment since May 13, 2003.

On August 15, 2003, Dr. Gosey completed a questionnaire regarding Schmid's limitations.  Dr. Gosey stated that he expected Schmid's pain to cause distractions while working.   However, the pain would not prevent Schmid from performing work or everyday activities. R. 122-24.

**Vocational Evidence**

Vocational expert Robert E. Walker testified at the hearing. Schmid's past work as a roughneck required a heavy exertion level with a skill level of five, compared to his work as a

crane operator which required a heavy exertion level and a skill level of six. R. 224-25. Given Schmid's skill level and his inability to stand, walk, or sit for a prolong period of time, there are three occupations available to Schmid: self-service gas station attendant (500 in Mississippi and 60,000 nationwide), an information clerk (400 in Mississippi and 50,000 nationwide), and a ticket taker (500 in Mississippi and 60,000 nationwide). R. 226-227. Walker also testified that the inability to engage in prolonged sitting could eliminate many, if not all, sedentary jobs. R. 227. The inability to stand for a prolonged period would eliminate fifty to sixty percent of light work jobs. *Id.* Additionally, Schmid does not have the appropriate skill level to supervise clerical or sales people. R. 229. Lastly, Walker testified that if a person experienced sufficient pain distracting them from their work, there would not be any available jobs. R. 232.

## **Standard of Review**

Judicial review of a final decision of the Commissioner is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct law. *Falco v. Shalada*, 27 F. 3d 160, 162 (5th Cir. 1994). "Substantial evidence is such relevant as a reasonable mind might accept a adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

In applying this standard, the Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F.2d at 1022. Credibility and conflicts in the evidence are issues for resolution by the Commissioner, not the Court. The Court may neither substitute its judgment for that of the Commissioner nor re-weigh the record

evidence. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) and citing *Johnson v. Brown*, 864 F. 2d 340, 343-44 (5th Cir.1998)); *Selders v. Sullivans*, 914 F. 2d 614, 617 (5th Cir. 1990). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Although the Court may reverse the Commissioner's decision if it is based upon faulty legal analysis, the Court should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chervon, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). In the absence of a finding that the Commissioner applied an incorrect legal standard, or that the decision is unsupported by substantial evidence, the Court must affirm the Commissioner's determination. *Boyd*, 239 F.3d at 704.

One claiming disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 416.912; *Materson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d at 618. Determination of a disability claim involves a five-step sequential evaluation process set out in 20 C.F.R. § 416.920(a)(4)(i-v). Under that analysis, a claimant will not be found to be disabled if he is engaged in work that constitutes substantial gainful activity [step one, 20 C.F.R. §416.920(a)(I), and § 416.920(b)]; nor will he be held disabled unless he has a severe medically determinable physical or mental impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities for the duration requirement of 12 continuous months. Step 2, 20 C.F.R. § 416,920(a)(ii) and § 416.920(c). A claimant will be found to be disabled is she has an impairment or combination of impairments that meets or equals one of the listings in appendix 1

to subpart P of part 404 of this chapter and meets the duration requirement. Step 3, 20 C.F.R. § 416.920(a)(iii) and § 416.920(d). If, after considering the assessment of claimant's residual functional capacity and past relevant work, it is determined that claimant can still perform past relevant work, she will not be found disabled. Step 4, 20 C.F.R. §416,920(a)(iv) and § 416.920(f). If, after considering the assessment of the claimant's residual functional capacity, age, education, and work experience, the Commissioner finds that the claimant can do alternative jobs, the claimant will not be held disabled. Step 5, 20 C.F.R. §416,920(a)(v) and § 416.920(g). The claimant bears the burden of proof on the first four steps in the disability evaluation process. If the inquiry proceeds past that point, the burden shifts to the Commissioner on the fifth step. *Masterson,* 309 F.3d at 272.

## Analysis

Schmid argues that the ALJ committed the following errors: (1) the AJL ignored Schmid's limitations of standing or walking no more than half of the day; (2) the AJL did not properly evaluate Dr. Gosey opinions of Schmid's limitations, and (3) the AJL did not properly evaluate Schmid's complaints of pain.

### (1) Schimd's Limitations

Schmid argues that the ALJ erred by ignoring Dr. Gosey's opinion that Schmid could not stand and walk more than four hours per day. In a questionnaire dated August 15, 2003, Dr. Gosey opined that Schmid could return to work but could only be on his feet for approximately half of the work day. Although Dr. Gosey did not place a specific number of hours on this limitation, on April 8, 2002, Dr. Gosey had reported that Schmid could be on his feet for 4 to 5 hours. Then on May 6, 2002, Dr. Gosey opined that Schmid could stand up about 5 to 6 hours

7

per day.  Furthermore, the State Agency medical consultant opined that claimant could stand or sit for six hours out of an eight-hour day.  The ALJ considered this evidence and determined that Schmid could only perform those light jobs that allowed Schmid to sit and stand at will and that Schmid retained the residual functional capacity to sit for 6 hours out of an 8 hour day and stand/walk a total of 6 out of 8 hours.

Regardless of whether Schmid's limitation on standing should be six hours or four hours, the ALJ presented a hypothetical to the vocational expert that assumed that the claimant would not have to perform any prolonged standing or sitting.  Additionally, the hypothetical took into consideration the sit/stand requirement.  Based on these limitations, the vocational expert identified occupations that would allow Schmid to sit or stand at will.  There is nothing in the ALJ's opinion or in the record to suggest that the ALJ ignored Dr. Gosey's opinion regarding Schmid's limitation on standing and walking.  To the contrary, the ALJ took these factors into account when he determined that Schmid is not disabled as defined by the Act.

### (2) ALJ's Interpretation of Limitations from Pain

Schmid argues that the ALJ erred by improperly evaluating Dr. Gosey's opinion as to the limitations caused by pain from Schmid's medical condition.  In the August 15, 2003 questionnaire, Dr. Gosey indicated that Schmid's pain would not prevent him from functioning in everyday activities or work.  The pain could be expected to cause distraction from and failure to complete job tasks; however, Dr. Gosey opined that with an appropriate job assignment, Schmid's pain would not limit him to such a degree as to create serious problems.  Specifically, Dr. Gosey concluded that a sedentary job would not cause such a limitation because walking and standing are what increase Schmid's pain to the point of distraction.  As with the sit/stand

limitation, the ALJ took into account Dr. Gosey's conclusions regarding Schmid's pain and concluded that he could perform light jobs that allow him to sit and stand at will.

### (3) Two-part Pain Test

Finally, Schmid argues that the ALJ failed to apply the requisite two-part pain test to evaluate Schmid's complaints of disabling pain. The ALJ must consider the subjective pain complaints of Schmid, but also is allowed to considered other medical evidence in determining the extent of the pain. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

In this case, the ALJ evaluated Schmid's pain from onset and analyzed Schmid's injury progression. The AJL considered what daily activities Schmid is able to perform. The ALJ specifically considered the location and extent of Schmid's pain and also considered how Schmid treats his pain.

The objective medical evidence supports a finding that Schmid did not suffer from disabling pain. Dr. Gosey consistently reported that Schmid could return to work, albeit with limitations. Dr. Gosey opined that Schmid's pain and/or medication would cause some limitations on Schmid's work but not serious limitations. A state agency physician also determined that Schmid was able to perform light work. Furthermore, the ALJ determined that Schmid's subjective complaints of pain were not entirely credible.

### RECOMMENDATION

Upon consideration of the pleadings, documents and evidence offered by the parties in support of their arguments, the record of the proceedings below, and the controlling law, the undersigned is of the opinion that the final decision rendered by the Commissioner is supported by substantial evidence and is in accord with relevant legal standards. Accordingly, the

undersigned recommends that the decision of the Commissioner be affirmed, and that Schmid's motion to reverse, or in the alternative to remand, should be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, any party who objects to this Recommendation must, within ten (10) days after being served a copy of the Recommendation, serve and file with the Clerk of Court his written objections to the Recommendation, with a copy to the District Judge, the U.S. Magistrate Judge and the opposing party. A party filing objections must identify specifically those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. A party's failure to file objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. A party who fails to file written objections to the proposed findings, conclusions and Recommendation within ten (10) days after being served with a copy, shall be barred, except upon the grounds of plain error, from attacking on appeal any proposed factual finding and legal conclusion accepted by the District Court to which the party did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed this the 20th day of August, 2007.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE